STATE *vs.* PROPRIETORS OF NORRIDGEWOCK FALLS BRIDGE.

Somerset, 1874.—May 31, 1876.

*Indictment. Way. Towns. Corporations.*

When a toll bridge is so built that it consists of two distinct structures, one extending from the shore to an island, and the other extending from the island to the opposite shore, and a highway is laid out and established over one of these structures, the burden of supporting it is changed from the bridge company to the town, within which that portion of the highway is situated.

ON EXCEPTIONS.

INDICTMENT, setting out the existence of a toll bridge across the Kennebec river between the towns of Anson and Madison, constituting a part of the public highway in and between these towns; that the toll bridge was the property of the proprietors of the Norridgewock Falls Bridge Corporation, created by act of the legislature of this state, passed February 9, 1827; and that the said company were bound by law to maintain and keep it in repair; and alleging that it was out of repair, and that the defendants neglected and refused to repair.

Within two years after the charter, the defendants built their bridge in pursuance thereof, from the Anson shore to an island in Madison, (59 Maine, p. 540,) on the western end of which they erected their toll house. Between the island and the Madison main shore, (to the east,) through a narrow channel about two rods in width, a part of the waters of the Kennebec flowed. S. C., p. 540.

A question was afterwards raised as to whose duty it was to build, maintain and keep in repair the short bridge. It was first built by the defendants.

In 1845, the county commissioners, on appeal, located a town way across the island and eastern channel. In 1846, on petition therefor, they located a highway over the town way, and corresponding thereto, and to the way originally built by the bridge proprietors, and continued the same "through Madison and a part of Cornville and Skowhegan as prayed for."

It is admitted that the short bridge was carried away by the great freshet in the fall of 1869, and has not been rebuilt.

An indictment was sustained against the inhabitants of Madison, for the same defective highway alleged in this indictment. (63 Maine, 546.)

At the trial, the defendants requested the presiding justice to instruct the jury that the laying out of the highway over the bridge by the county commissioners, would constitute a defense to this indictment. But the presiding justice, for the purpose of the trial, and of presenting the legal question raised to the full court, declined to give the requested instruction, but on the contrary instructed the jury that it was no defense; and the defendants, the verdict being guilty, alleged exceptions.

*J. S. Abbott,* for the defendants.

WALTON, J. This is an indictment against the proprietors of a toll bridge. They built their bridge across the Kennebec river, between the towns of Anson and Madison, at a point where there was an island in the river, so that the bridge, when completed, consisted of two distinct structures; one from the Anson shore to the island, and another from the island to the Madison shore. A highway was afterwards laid out over that portion of the bridge extending from the Madison shore to the island; and this court has already decided that thereby the town of Madison became liable for its support. *State* v. *Madison*, 63 Maine, 546. In the concluding paragraph of the opinion the court there say : "The highway described in the indictment was legally located and established in the town of Madison, and it was the duty of that town to keep it safe and convenient for travelers." And the only question to be decided in this case is, whether the bridge company is also liable to indictment for the non-repair of that portion of the bridge over which the highway was located.

We think not. The only object of an indictment for a bad road is to enable the court to impose a fine and appoint an agent to make the needed repairs. To hold that two independent corporations are liable to keep in repair, and to rebuild, if necessary, one and the same bridge; and that the court may assess two fines

and appoint two independent agents to do the work, would be absurd. Two bridges cannot occupy the same site; nor can two agents, acting independently of each other, build one and the same bridge. The attempt to do so would lead to a hopeless conflict of authority. One might determine to build a wooden bridge, the other an iron bridge. One might determine to have wooden piers, the other stone piers; and so on. The result of such a conflict of authority is obvious.

Nor do we perceive any reason why the bridge company should be held liable to keep in repair, or to rebuild, that portion of their bridge over which a highway has been located. They can no longer exact toll for crossing it. It is now a public highway, and free to all. We think the company should not be.

Our conclusion is, that when a toll bridge is so built that it cousists of two distinct structures, one extending from the shore to an island, and the other extending from the island to the opposite shore, and a highway is laid out and established over one of these structures, so that the bridge company no longer has the right to exact toll for crossing it, the burden of supporting it is changed from the bridge company to the town within which that portion of the highway it situated.          *Exceptions sustained.*

APPLETON, C. J., DANFORTH, VIRGIN and PETERS, JJ., concurred.